UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TUG CONSTRUCTION, LLC,

    Plaintiff,

v.

HARLEY MARINE FINANCING, LLC,

    Defendant.

CASE NO. 2:19-cv-00632-BAT

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is the motion for judgment on the pleadings of Defendant Harley Marine Financing, LLC ("HMF"). Dkt. 19. HMF contends Plaintiff Tug Construction, LLC ("Tug Construction") is barred by res judicata from reasserting claims in this lawsuit that were settled in a prior lawsuit. In this lawsuit, Tug Construction asserts claims for damages pursuant to the Bareboat Charters for five vessels, including the M/V LELA FRANCO, for unpaid rentals and repair expenses (the "Hire and Expenses Litigation"). In the prior lawsuit, Tug Construction sued for return and possession of the LELA FRANCO after Tug Construction terminated the Bareboat Charter on the LELA FRANCO (the "Possessory Litigation").

The Court denies the motion. HMF also filed a motion for protective order, noted for consideration on October 4, 2019, requesting a stay of discovery pending resolution of the motion for judgment on the pleadings. Dkt. 23. The motion for protective order is now moot and therefore, is also denied.

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 1

STANDARDS OF REVIEW

A.     Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Judgment on the pleadings is proper where "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).

Judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment. Fed.R.Civ.P. 12(c); *cf. Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir.1982) (discussing Fed.R.Civ.P. 12(b)(6)), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 838 (1984). The Court may however, take into consideration such facts as are available from judicial notice such as court filings and other matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

B.     Res Judicata

Under the doctrine of claim preclusion, also known as res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Res judicata "bar(s) all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action[.]" *Ross v. IBEW*, 634 F.2d 453, 457 (9th Cir. 1980). "Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n.3 (9th Cir. 2002).

"If reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied." *Matter of Braniff Airways, Inc.*, 783 F.2d 1283, 1289 (5th Cir. 1986); *see also Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) (refusing to preclude the plaintiff from pursuing its claim when that claim "was not distinctly alleged" in the prior litigation and the court made no findings pertaining to the claim). "Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth . . . It therefore is to be invoked only after careful inquiry." *Brown v. Felsen*, 442 U.S. 127, 132, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979).

## FACTS AND PROCEDURAL BACKGROUND

### A. The Parties

Tug Construction is a Washington limited liability company based in Seattle, Washington. Tug Construction is the owner of five towing vessels: the DR HANK KAPLAN (Official No.1266463); the EARL W REDD (Official No. 1273621); the LELA FRANCO (Official No. 1258229); the MICHELLE SLOAN (Official No. 1258228); and the RICH PADDEN (Official No. 1266462) (collectively, the "Tugs"). Dkt. 1 (Complaint for Breach of Bareboat Charter Contracts (the Hire and Expenses Litigation)), Introduction, ¶ 1.

HMF is a Delaware limited liability company based in Seattle, Washington. *Id.*, ¶ 2. HMF chartered the Tugs under five separate Bareboat Charters. Dkt. 1.1–1.5, Ex. A–E.

HMF states that the Hire and Expenses Litigation is just one of "several recent cases between related parties." Dkt. 23, p. 3. One of the two owners of Tug Construction (Harley Franco or "Franco") is engaged in a litigation battle with an investor (Macquarie Capital) over control of Harley Marine Services, Inc., the group of companies of which HMF is a part. *See*, *Matthew Godden and Tobias Bachteler v. Harley Franco*, In the Court of Chancery of the State

of Delaware, No. 2018-0504-VCL; and *Harley Franco v. Macquarie Capital (USA) Inc., et al.*, In the Superior Court in and for the County of King, No. 18-2-16360-9 SEA. Tug Construction is not a part of either lawsuit. In addition to the Possessory Litigation and this lawsuit, Tug Construction was a party to one other suit as a result of the Macquarie Capital/Franco dispute: a suit brought by HMS claiming sale or charter of the five Tugs involved in the present litigation was barred by a non-competition contract Franco signed. *See Harley Marine Services, Inc. v. Harley Franco & Tug Construction, LLC*, In the Superior Court in and for the County of King, No. 19-2-08826-5 SEA (the "Noncompetition Suit"). On August 13, 2019, Judge Laura Inveen issued a 15-page decision in the Noncompetition Suit concluding HMS was not so prohibited. Dkt. 28, Webster Decl., Ex. AA (hereinafter "Inveen Decision, Ex. AA").

B.  The Possessory Litigation – (First Action)

On March 21, 2019, Tug Construction filed a Verified Complaint for the Arrest of Vessel against the LELA FRANCO, *in rem*, and against HMF, *in personam*, in the U.S. District Court for the Central District of California, for return of the LELA FRANCO. *Tug Construction, LLC v. M/V LELA FRANCO, O.N. 1258229*, No. 2:19-cv-02134 (C.D. Cal.) (Possessory Litigation). *See* Dkt. 28, Declaration of Jess G. Webster, Ex. F (Verified Complaint).[1] Pursuant to FRCP SUP AMC Rule C(2)(c); E(3)(a), a complaint for the repossession of a vessel must be filed where the vessel is located at that time. The facts preceding this filing are contained in the Verified Complaint and are summarized herein.

On February 12, 2019 Tug Construction notified HMF that Tug Construction was terminating HMF's charters on three Tugs, including the LELA FRANCO, "effective February

---

[1] To determine what issues were actually litigated in the Possessory Litigation, the Court takes judicial notice of the complaint, attached exhibits, and briefing in that case. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir.2002).

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 4

28, 2019, the last date through which hire for the vessels had been paid." Dkt. 28, Ex. F at ¶ 12 and Exhibit E thereto.[2] At the time it was notified of the termination, HMF was operating the LELA FRANCO in the vicinity of Los Angeles, California. *Id.* HMF agreed to return the LELA FRANCO to Tug Construction by March 8, 2019 in the vicinity of Los Angeles, California. *Id.* at ¶ 14 and Exhibit G thereto. HMF failed to do so and asserted it would return the vessel to Tug Construction by March 15, 2019. *Id.* at ¶ 15.

On March 12, 2019, Tug Construction notified HMF that HMF was in breach of its obligation to return the vessel and demanded the LELA FRANCO be returned no later than March 15, 2019. *Id.* at ¶ 16 and Exhibit H attached thereto. Subsequent emails exchanged between the parties confirmed that HMF would not be returning the LELA FRANCO by March 15, 2019. *Id.* ¶ 17 and Exhibit I attached thereto. HMF failed to return the LELA FRANCO on March 15, 2019 and did not respond to inquiries regarding its return. *Id.* at ¶ 18.[3]

Tug Construction alleged that the vessels that had been returned by HMF (the DR. HANK KAPLAN, the EARL REDD, the MICHELLE SLOAN, and the RICH PADDEN), were in improper and deficient condition "which will necessitate substantial maintenance and repair work to bring the tugs into the condition required for redelivery under the terms of the bareboat charter agreements." Tug Construction notified HMF of these deficiencies and its obligation to continue to pay Tug Construction charter hire until the deficient conditions are rectified, but

---

[2] *See* Inveen Decision. Dkt. 28, Webster Dec., Ex. AA (concluding that Tug terminated the three charters after HMF terminated the first two due to concerns about HMF's continued willingness and financial ability to charter the remaining vessels.

[3] The parties disagree on whether the Bareboat Charters require a 30-day notice of termination and on whether Tug Construction's notice of termination was sufficient. Dkt. 19, p. 4; Dkt. 1.1–1.5, Ex. A–E). However, sufficiency of the notice of termination is not relevant to the issue of whether res judicata bars the present litigation.

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 5

HMF refused or failed to pay for the Tugs, other than the LELA FRANCO. *Id.* at ¶ 19.

Because HMF failed to timely pay any of the money due on the Tugs, Tug Construction alleged it had reason to believe that HMF was in financial distress and not paying its bills as they became due. Thus, Tug Construction alleged, it feared that maritime liens for necessaries[4] could be accumulating on the LELA FRANCO and therefore it should be urgently repossessed. *Id.* at ¶ 29.

Tug Construction specifically sought the following relief: (1) issuance of process for the arrest of the LELA FRANCO; (2) termination of HMF's possession of the LELA FRANCO and removal of HMF's crew; (3) an order requiring HMF to show cause why the U.S. Marshal should not immediately turn over possession of the LELA FRANCO; (4) judgment against HMF terminating any interest in the LELA FRANCO; and (5) judgment for damages, fees, costs, and expenses "incurred as a result of the matters alleged in this Verified Complaint." Dkt. 28, Ex. F, ¶¶ 1-5.

The Court set a hearing for April 2, 2019 for HMF to show cause but prior to the hearing, on April 1, 2019, the parties entered into a joint stipulation for the immediate release of the LELA FRANCO to Tug Construction. Dkt. 28 at ¶ 13, Ex. I (Joint Stipulation for Immediate Release of LELA FRANCO, Ex. I).

On April 2, 2019, HMF filed its Answer. HMF denied that any charter hire was due and owing under the Bareboat Charters for the Tugs (other than the LELA FRANCO); denied it was in financial distress and not paying its bills and obligations; and denied that maritime liens for necessaries may be accumulating on the LELA FRANCO. Dkt. 28, Ex. K, ¶¶ 20-21. HMF did

---

[4] "Necessaries" is a maritime term defined to mean expenses creating a lien, including "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C § 31301(4).

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 6

not assert any claims against Tug Construction for breach of the LELA FRANCO Bareboat Charter or for improper termination of that Bareboat Charter. *Id.* Tug Construction asserted no claims or defenses as to the other Tugs mentioned in the complaint.

On April 17, 2019, Tug Construction filed a motion seeking to recover its attorneys' fees and costs against the *in personam* defendant HMF, of $41,184.84 (including a claim for the fees of the substitute custodian) of $14,120.75, for a total sum of $55,305.59, incurred through the date of and "in recovering possession of the M/V LELA FRANCO." Dkt. 28, Webster Dec., Exs. L and M ("Motion for Fees and Costs" and Application to the Clerk to Tax Costs); *see also* Ex. N (proposed judgment) and Ex. O (Memorandum in Support) (as "the prevailing party [Tug Construction] is entitled to recover from Harley Marine the legal fees and costs incurred by Tug Construction to recover possession of its tug.")

On April 26, 2019, the parties stipulated as follows:

> that all claims and defenses as asserted and alleged in the above captioned action as set forth in the Verified Complaint of Tug Construction (Dkt. No. 1) and the Answer to Verified Complaint (Dkt. No. 27) shall be and hereby are dismissed by Tug Construction with prejudice, without an award of costs, expenses or attorneys' fees to either party, effective with the filing of this Stipulation for Dismissal With Prejudice, as provided for and pursuant to Rule 41(a)(1)(A)(ii) and Rule 41(a)(1)(B) of the Federal Rules of Civil Procedure. Dismissal *shall be without prejudice as to any other claims of the parties relating to the Bareboat Charter agreement between the parties for the M/V LELA FRANCO.*

Dkt. 28, Ex. Y (emphasis added). The parties also agreed that the *in rem* claim for the return of the LELA FRANCO was moot as the U.S. Marshal had already returned the vessel to Tug Construction. *Id.* at 2.

On April 29, 2019, the U.S. District Court for the Central District of California entered an Order "pursuant to the stipulation of the parties" that the Possessory Litigation "be dismissed with prejudice, pursuant to the terms, conditions, and reservation of rights set forth in" the

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 7

parties' stipulation. Dkt. 28, Ex. Z. On May 13, 2019, Tug Construction withdrew from the Court's consideration, its motion for attorney fees. Dkt. 20, Declaration of Austin Rainwater, Ex. 1 at 6.

The amount of the settlement is not included in the parties' stipulation or the order of dismissal. However, HMF repeatedly asserts in its motion that Tug Construction "extract[ed] a substantial settlement payment from HMF" and that "HMF made a large cash payment" to Tug Construction. *See*, *e.g.*, Dkt. 19 at p. 3, ln. 15; p. 6, ln. 4; p. 10, ln. 18; p. 9, ln. 12. By these statements, HMF is presumably inferring that the parties settled more than just the costs and attorney fees incurred by Tug Construction ($41,184.84) in recovering possession of the LELA FRANCO. In response, Tug Construction provided the email communications between counsel discussing the parties' settlement positions and negotiations.

However, the Court does not find it necessary to, and has not considered the extraneous evidence of settlement negotiations provided by the parties, in determining whether the present litigation is barred by res judicata. *See* Fed.R.Civ.P. 12(c); *cf. Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir.1982) (discussing Fed.R.Civ.P. 12(b)(6)), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 838 (1984) (when a district court goes beyond the pleadings to resolve an issue, such a proceeding must properly be treated as a motion for summary judgment).

C. <u>The Hire and Expenses Litigation – (Current Action)</u>

In the Hire and Expenses Litigation, filed on April 29, 2019 in this Court, Tug Construction asserts damage claims relating to the Bareboat Charters for the Tugs for (i) unpaid hire (rental payments) and (ii) repair expenses. Dkt. 1.1–1.5, Ex. A–E; Dkt. 1, pgs. 11–12, ¶¶ 35–38. By their terms, the Bareboat Charters mandate that any suit relating to the charter must be filed in Seattle, Washington. Dkt. 1.1–1.5, Ex. A–E. Tug Construction alleged that HMF

breached the terms of the Bareboat Charters for each of the Tugs by, *inter alia*, failing to: properly maintain and repair the Tugs, return the Tugs in the proper condition, pay for necessary repairs, and continue charter hire accruing until the Tugs were brought into the condition required for their redelivery. Dkt. 1, ¶ 4.

With regard to the LELA FRANCO, Tug Construction specifically alleged facts relating to the Bareboat Charter agreement dated June 19, 2015 between Tug and Millennium Maritime, Inc., assignment of the Bareboat Charter agreement to HMF, and HMF's obligation to pay charter hire in advance on the first day of the month in the amount of $63,753.33 per month with one percent (1%) interest per month on sums not paid. Dkt. 1, ¶ 5. Tug Construction further described termination of the Bareboat Charter and the filing of the Possessory Litigation to secure repossession of the LELA FRANCO in Los Angeles on April 3, 2019. *Id.*, ¶¶ 13, 14. After repossession, an inspection of the LELA FRANCO revealed that it had not been properly maintained, and was not in the condition required for redelivery under the Bareboat Charter. *Id.*, ¶ 15. On April 25, 2019, counsel for Tug Construction notified counsel for HMF in writing of the off-hire survey results of William Kelley dated April 22, 2019 and Subsea Global Solution's Hull Inspection and Cleaning report dated April 10 & 11, 2019 performed on the LELA FRANCO. Tug Construction notified HMF that it was in breach of its obligations under the Bareboat Charter and that HMF's obligation to pay charter hire would continue until the LELA FRANCO was brought to the proper condition. *Id.*, ¶ 21, Ex. J.

On May 21, 2019, HMF filed its Answer, in which it acknowledged the Possessory Litigation, but denied that the LELA FRANCO was not in "proper condition" when it was returned. Dkt. 9, ¶¶ 18, 25. HMF also denied that the other Tug Boats required repairs when they were returned to Tug Construction. *Id.*, ¶ 26. HMF did not assert that Tug Construction was

barred by res judicata from bringing the Hire and Expenses Litigation. *See id.*, pp. 5-6.

DISCUSSION

HMF contends that the Possessory Litigation was not just an action to repossess the LELA FRANCO and obtain attorneys' fees and costs for its repossession, but also an action to recover unpaid hire and repair expenses on all the Tugs. Tug Construction contends that a comparison of the complaints reveals that the only real relationship between the litigations is the Bareboat Charter for the LELA FRANCO. Tug Construction also points out that its hire and expenses claim on the LELA FRANCO had not yet matured at the time of the Possessory Litigation as it did not have a chance to inspect the LELA FRANCO to determine whether in fact, it had such a claim. And, the accrual of hire and expenses claims on the remaining Tugs was mentioned in the Possessory Litigation merely to illustrate Tug Construction's fear that the LELA FRANCO would also be returned in need of repairs. Pursuant to the forum selection clause of the Bareboat Charter for the LELA FRANCO (and the forum selection clauses of the Bareboat Charter for the other Tugs), any suits related to breach of the Bareboat Charters were required to be filed in Seattle, Washington, while the Possessory Litigation had to be brought where LELA FRANCO was found at the time of repossession.

Finally, in the parties' settlement of the Possessory Litigation, "any other claims of the parties relating to the Bareboat Charter between the parties for the M/V LELA FRANCO" were dismissed without prejudice. Tug Construction maintains that this separated the claims for the possession of the LELA FRANCO from claims for any breach of the Bareboat Charter by HMF, which would include claims for hire and expenses. HMF counters that the "without prejudice clause" "only excluded from res judicata those claims and defenses (1) relating to the Bareboat

Charter agreement …. for the M/V LELA FRANCO, that (2) were not actually asserted and alleged in the complaint." Dkt. 19, p 15.

The Court concludes that Tug Construction did not assert a claim for any unpaid hire and expenses for any of the Tugs (including the LELA FRANCO) in the Possessory Litigation and therefore, res judicata does not bar the Hire and Expenses Litigation.

A. <u>Waiver of Res Judicata Defense</u>

At the outset, the Court addresses Tug Construction's contention that HMF waived its right to assert the doctrine of res judicata because it failed to raise it as an affirmative defense in its answer. "Claim preclusion (res judicata), as Rule 8(c) of the Federal Rules of Civil Procedure makes clear, is an affirmative defense." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912 (1998); *see also Rotec Industries, Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1119 (9th Cir. 2003). However, a defendant may raise an affirmative defense for the first time in a motion for judgment on the pleadings, but "only if the delay does not prejudice the plaintiff." *Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir.1997); *see also Healy Tibbitts Constr. Co. v. Ins. Co. of North America*, 679 F.2d 803, 804 (9th Cir.1982) (similar language). Given the early stages of this litigation, there has been no delay. Tug Construction also has shown no prejudice. Therefore, the Court finds that HMF did not waive the affirmative defense by raising it here for the first time.

B. <u>Res Judicata</u>

Under res judicata (claim preclusion), a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in a prior action. *In re Imperial Corp. of America*, 92 F.3d 1503, 1506 (9th Cir. 1996). The rationale behind this doctrine is multifaceted: 1) it fosters reliance on judicial action by

minimizing the possibility of inconsistent decisions; 2) it protects parties from repetitive actions on the same facts; and 3) it conserves judicial resources. *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir. 1994). There are three (3) elements a party must establish to utilize this defense: 1) an identity of claims; 2) a final judgment on the merits; and 3) party privity. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

### 1. Identity of Claims

To determine if there is an identity of claims, the Court looks to four factors, which are not to be applied "mechanistically":

> (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (citing *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir. 2003). Though all four factors are considered, "[r]eliance on the transactional nucleus element is especially appropriate because the element is 'outcome determinative.'" *ProShipLine Inc. v. Aspen Infrastructures LTD*, 609 F.3d 960, 968 (9th Cir. 2010) (quoting *Mpoyo*, 430 F.3d at 988). Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action. *Tahoe-Sierra Preservation*, 322 F.3d at 1077-78. The party asserting a claim preclusion argument "must carry the burden of establishing all necessary elements." *Taylor v. Sturgell*, 553 U.S. 880, 907, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (quoting 18 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 4405, at 83 (2d ed. 2002)).

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 12

Here, Tug Construction sued (1) *in rem* for possession of the LELA FRANCO and *in personam* against HMF for recovery of repossession expenses, and (2) *in personam* against HMF for recovery of hire and expenses following breach of five Bareboat Charters (including the LELA FRANCO's). Thus, the only common thread between the two actions is one of five Bareboat Charters. While Tug Construction discussed unpaid hire and expenses as to the other tugs in the Possessory Litigation, it did so only in the context of explaining how they affected Tug Construction's need for repossession of the LELA FRANCO. HMF would like the Court to interpret Tug Construction's request for "damages, fees, costs, and expenses incurred as a result of the matters alleged in the Verified Complaint" (Dkt. 28, Ex. F, ¶¶ 1-5) as a request for the unpaid hire and expenses for all the Tugs. However, this is not a reasonable interpretation of the Possessory Litigation as Tug Construction did not state a claim for or request the payment of any unpaid hire and expense claims for the LELA FRANCO or the other Tugs in that litigation. As stated in *Chao v. A-One Med. Servs., Inc.*, 346 F.3d at 922, simply discussing other claims in a complaint does not make those claims asserted in that complaint.

As to whether rights or interest established in the prior judgment will be destroyed or impaired by prosecution of the second action, the only right established in the Possessory Litigation was that Tug Construction, as owner, was entitled to repossession of the LELA FRANCO. In fact, HMF stipulated to the LELA FRANCO'S return and asserted no defenses or counterclaims to that possession. By this motion, HMF seeks to prevent Tug Construction from litigating five unpaid hire and repair costs claims. Notably, none of HMF's rights to defenses or counterclaims with respect to the hire and repair costs claims were destroyed or impaired by the order of dismissal in the Possessory Litigation. HMF is free to assert those in the Hire and Expenses Litigation.

As to whether the same evidence will be presented, the Court first notes that no evidence was required in the Possessory Litigation because it was settled. Nevertheless, the only potential piece of evidence that overlaps the two litigations is the Bareboat Charter for the LELA FRANCO. The Hire and Expenses Litigation, on the other hand, involves the terms and conditions of five Bareboat Charters and, although the charters are on the same form, they were executed at different times and the amount of hire due and the kinds and costs of repair claimed are particular to each Tug. Thus, evidence as to each Tug will include, at a minimum, payments of charter hires, assignments, notices of termination, dates and circumstances of redelivery, the results of the off-hire surveys, and extent of necessary repairs.

As to "whether the two suits involve infringement of the same right," the Court finds that they do not because Tug Construction was not asserting unpaid hire and expense claims for the five Tugs in the Possessory Litigation. As Tug Construction correctly notes, this latter inquiry is directed more to the situation where a court is considering whether claims brought in a second suit should have been brought in the prior suit. It is also noted that the Possessory Litigation had to be brought where the LELA FRANCO was found, while any action for the breach of the Bareboat Charters had to be brought in Seattle, Washington. HMF is correct that the remedy to enforce the forum selection clauses of the Bareboat Charters would be a change of venue and not dismissal and therefore Tug Construction could have brought all the claims in the Possessory Litigation. However, at the time Tug Construction brought the action to repossess the LELA FRANCO, it would not have known the extent of damage to the LELA FRANCO as it had not yet been returned. Instead it was anticipating there would be damage as the other Tugs had allegedly been returned damaged. Claims that have not yet matured, or the extent of which is not yet known, are not required to be brought in the same lawsuit as claims that otherwise arise from

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 14

the same "transactional nucleus of facts." *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305, 195 L.Ed. 2d 665 (2016); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) (". . . claim preclusion does not apply to claims that accrue after the filing of the operative complaint.").

Based on the foregoing, the Court concludes that HMF has failed to show an identity of claims sufficient to preclude the Hire and Expenses Litigation.

2. <u>Final Judgment on the Merits</u>

Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (internal citations omitted). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); Scott, *Collateral Estoppel by Judgment*, 56 Harv.L.Rev. 1, 2-3 (1942); RESTATEMENT (SECOND) OF JUDGMENTS § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion)). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. *Id.*

The parties' settlement and the district court's approval of the settlement and dismissal of the Possessory Litigation amounts to a final judgment on the merits. *In re Dominelli*, 820 F.2d 313, 316 (9th Cir 1987). The issue here however, is whether the parties had a "full and fair opportunity to litigate" the claims raised in the Hire and Expenses Litigation. The Court

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 15

concludes that they did not as Tug Construction did not raise a claim for hire and expenses on the Tugs in the Hire and Expenses Litigation and, as to the LELA FRANCO, the parties specifically agreed that dismissal would be without prejudice as to any other claims relating to the LELA FRANCO's Bareboat Charter. HMF urges the Court to conclude that this carve out applied only to "other, irrelevant claims regarding the LELA FRANCO," but HMF does not identify what those "irrelevant claims" might be. The Court declines to fill in any perceived blanks in the parties' settlement. Rather, if reasonable doubt exists as to exactly what was meant by "any other claims relating to the Bareboat Charter between the parties for the LELA FRANCO," the doctrine of res judicata should not be applied. *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *McNellis v. First Federal Savings and Loan Association of Rochester, New York*, 364 F.2d 251, 257 (2d Cir.), *cert. denied*, 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966).

      3.      <u>Party Privity</u>

The final factor for res judicata, complete privity between the parties, is not in serious dispute. Tug Construction is the plaintiff and HMF is the defendant in both the Possessory Litigation and the Hire and Expenses Litigation. The "parties in both actions are identical, and therefore quite obviously in privity." *Tahoe-Sierra Pres. Council,* 322 F.3d at 1081.

HMF argues that it irrelevant that Tug Construction also sought to arrest the LELA FRANCO in the Possessory Litigation, as the rules against splitting cases also apply in admiralty and it is irrelevant whether successive suits are *in rem* or *in personam*. Dkt. 19, p. 19. However, the principals cited are sound only when there is but one cause of action based on the same injury or the single invasion of a primary right. As noted above, Tug Construction sued *in rem* for the possession of the LELA FRANCO and *in personam* against HMF for recovery of costs

associated with that re-possession in the Possessory Litigation. Here, Tug Construction is suing *in personam* against HMF for damages incurred for the alleged breach of the five Tug Bareboat Charters.

## CONCLUSION

Judgment on the pleadings "may only be granted when the pleadings show that it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" and the moving party is clearly entitled to prevail. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996)). After careful inquiry, the Court concludes that HMF has not met its burden of proving res judicata and therefore, its motion for judgment on the pleadings (Dkt. 19) is **DENIED**. For this reason, HMF's motion for protective order (Dkt. 23) is **DENIED as moot**.

DATED this 24th day of September, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER DENYING MOTION FOR
JUDGMENT ON THE PLEADINGS - 17